IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
_____

MEMPHIS HOUSING AUTHORITY,

    Plaintiff-Appellee,

Vs.

RAMONA STEWART,

    Defendant-Appellant.

Shelby Circuit No. 89205 T.D.
C.A. No. 02a01-9803-CV-00087

FILED

**January 12, 1999**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

FROM THE SHELBY COUNTY CIRCUIT COURT
THE HONORABLE ROBERT L. CHILDERS, JUDGE

William Yonkowski of Memphis
For Appellant

Gregory L. Perry of Memphis
For Appellee

*AFFIRMED AND REMANDED*

Opinion filed:

**W. FRANK CRAWFORD,**
**PRESIDING JUDGE, W.S.**

**CONCUR:**

**ALAN E. HIGHERS, JUDGE**

**DAVID R. FARMER, JUDGE**

    This case involves the termination of a lease. Defendant-Appellant, Ramona Stewart,

appeals from the trial court's order granting summary judgment in favor of Plaintiff-Appellee,

Memphis Housing Authority (MHA).

On January 5, 1996, Ms. Stewart entered into a dwelling lease with MHA. Pursuant to Section 7 of the lease, captioned <u>Obligations of Resident</u>, Ms. Stewart agreed, in pertinent part, to the following:

> L.　To conduct himself/herself and cause other household members to conduct themselves in a manner which will not disturb any public housing Resident's peaceful enjoyment of their accommodations and which will be conducive to maintaining the Memphis Housing Authority [sic] public housing developments in a decent, safe, sanitary and crime-free environment;
>
> M.　To refrain from illegal or other activity which impairs the physical or social environment of the development; and cause other persons who are on the premises with the Resident's consent to refrain from illegal or other activity which impairs the physical or social environment of the development;
>
> N.　To refrain from and cause household members, guest or persons under the Residents control from any criminal activity that threatens the health, safety or right to a peaceful enjoyment of the Memphis Housing Authority's public housing premises by other residents or employees of the Memphis Housing Authority which includes but is not limited to any drug related criminal activity on or near such premises; . . .

The termination provisions of the lease pertinent to the issue before us provides:

> Either of the following types of criminal activity by the resident; any members of the household, a guest, or other person under the resident's control, shall be cause for termination of tenancy and such termination shall be excluded from Resident's right to a grievance hearing.
>
> A. Any criminal activity that threatens the health, safety, or right to peaceful enjoyment of the premises of the residents or employees of the Memphis Housing Authority.

*　　　*　　　*

On or about June 3, 1997, while asleep in her apartment, Ms. Stewart was awakened by her boyfriend, Mariko Webster,[1] at approximately 1:00 A.M. At this time, Mr. Webster showed Ms. Stewart a large gun. On or about June 5, 1997, Ms. Stewart was advised by some of her neighbors that Mr. Webster was involved in the theft of guns from the Federal Bureau of Investigation (FBI). After learning of Mr. Webster's involvement in the theft, Ms. Stewart searched her apartment and found two large black cases in her closet. Without opening the cases and upon the advice and assistance of her grandfather, Ms. Stewart removed the two cases from her apartment and discarded them in an overgrown field. The cases, which contained two M-16

---

[1] Mr. Webster is the father of Ms. Stewart's youngest child.

2

automatic rifles and one MP-5 submachine gun, were later discovered and returned to the FBI. Ms. Stewart was subsequently arrested and charged with theft of property over $10,000.00.

On June 16, 1997, as a result of the foregoing events, Ms. Stewart received a lease termination notice from MHA. The notice stated that Ms. Stewart's lease was terminated for violation of the above-quoted lease provisions in that she failed to refrain from illegal activities by concealing stolen property.

On June 18, 1997, Ms. Stewart was indicted in federal court for receiving and concealing stolen property. Subsequently, Ms. Stewart pled guilty to Misprision of a Felony.

MHA filed a detainer warrant on June 17, 1997. On July 16, 1997, the case was heard in General Sessions Court which rendered a judgment in favor of Ms. Stewart. MHA appealed to the Circuit Court which subsequently granted MHA's motion for summary judgment on March 6, 1998, thus, prompting this appeal. On appeal, the only issue presented for our review is whether the trial court erred in granting MHA's motion for summary judgment.

A motion for summary judgment should be granted when the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. Tenn. R. Civ. P. 56.04. The party moving for summary judgment bears the burden of demonstrating that no genuine issue of material fact exists. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). On a motion for summary judgment, the court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence. *Id.* In *Byrd v. Hall*, 847 S.W.2d 208 (Tenn. 1993), our Supreme Court stated:

> Once it is shown by the moving party that there is no genuine issue of material fact, the nonmoving party must then demonstrate, by affidavits or discovery materials, that there is a genuine, material fact dispute to warrant a trial. In this regard, Rule 56.05 provides that the nonmoving party cannot simply rely upon his pleadings but must set forth *specific facts* showing that there is a genuine issue of material fact for trial.

*Id.* at 211 (citations omitted) (emphasis in original).

Summary judgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion. *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995). Since only questions of law are involved, there is no presumption of correctness regarding a trial court's grant of summary judgment. *Bain*, 936 S.W.2d at 622. Therefore, our

3

review of the trial court's grant of summary judgment is *de novo* on the record before this Court. *Warren v. Estate of Kirk*, 954 S.W.2d 722, 723 (Tenn. 1997).

It is well-established that leases are contracts and, thus, the rules of construction pertaining to contracts apply to leases in ascertaining the scope and meaning of leases. 49 Am. Jur. 2d **Landlord and Tenant** § 43 (1995). "The cardinal rule of construction of written instruments is that the intention of the parties as ascertained from the language of the instrument controls." *St. Paul Surplus Lines Ins. Co. v. Bishops Gate Ins. Co.*, 725 S.W.2d 948, 951 (Tenn. App. 1986) (citing *First Am. Nat'l Bank v. Chicken Sys. of Am., Inc.*, 510 S.W.2d 906, 908 (Tenn. 1974)). However, where the lease is unambiguous, the language in the contract itself establishes the intent of the parties. Thus, if the lease is plain and unambiguous, the meaning of the lease is a question of law, and the function of the court is to interpret the contract as written, according to its plain terms. *Petty v. Sloan*, 197 Tenn. 630, 637-39, 277 S.W.2d 355, 358-59 (1955). "Furthermore, this Court cannot make a new contract for the parties, but can merely construe the lease as written." *St. Paul Surplus Lines Ins. Co.*, 725 S.W.2d at 951 (citing *Stone v. Martin*, 185 Tenn. 369, 374, 206 S.W.2d 388, 390 (1947)).

The crime of Misprision of a Felony is provided for in 18 U.S.C. § 4:

> Whoever, having knowledge of the actual commission of a felony cognizable by a court of the United States, conceals and does not as soon as possible make known the same to some judge or other person in civil or military authority under the United States, shall be fined under this title or imprisoned not more than three years, or both.

Thus, the elements of Misprision of a Felony are that the principal committed and completed the felony alleged, that the defendant had full knowledge of that fact, that the defendant failed to notify the authorities, and that the defendant took an affirmative step to conceal the crime. *United States v. Stuard*, 566 F.2d 1 (6th Cir. 1977).

In the case sub judice, the guilty plea to Misprision of a Felony was admitted into evidence by virtue of a written stipulation of facts. The admission into evidence of the final judgment of conviction proves any facts essential to sustain the judgment of conviction. Tenn. R. Evid. 803(22).[2] *See State v. Eldridge*, 951 S.W.2d 775, 783 (Tenn. Crim. App. 1997)

---

[2] Tenn. R. Evid. 803(22) states:

> Evidence of a final judgment adjudging a person guilty of

4

("Evidence of the final judgment of conviction would be admissible in the civil trial to prove the facts essential to sustain the judgment.").

Taking into consideration her guilty plea and the elements of the offense, it is readily apparent that Ms. Stewart's conduct constituted a violation of the above-quoted provisions of her lease, and the lease was properly terminated.

Accordingly, the judgment of the trial court is affirmed, and the case is remanded for such further proceedings as necessary. Costs of appeal are assessed against the Appellant.

        _____
        **W. FRANK CRAWFORD,**
        **PRESIDING JUDGE, W.S.**

**CONCUR:**


_____
**ALAN E. HIGHERS, JUDGE**

_____
**DAVID R. FARMER, JUDGE**

---

a crime punishable by death or imprisonment in excess of one year to prove any fact essential to sustain the judgment, but not including, when offered by the prosecution in a criminal case for purposes other than impeachment, judgments against persons other than the accused. The pendency of an appeal may be shown but does not affect admissibility.